**Case No. 20-71765 (L)**
**(consolidated with Case Nos. 20-72734 and 20-72749)**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

LEAGUE OF CALIFORNIA CITIES, *et al.*,
*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION,
*Respondents*,

ON PETITION FOR REVIEW OF AN ORDER OF THE
FEDERAL COMMUNICATIONS COMMISSION

**FURTHER SUPPLEMENTAL EXCERPTS OF RECORD OF PETITIONERS LEAGUE OF CALIFORNIA CITIES, *et al.* (No. 20-71765); CITY OF SEATTLE, WA, *et al.* (No. 20-72734); CITY OF BOSTON, MA, *et al.* (No. 20-72749); and INTERVENORS CITY OF THOUSAND OAKS, *et al.* (No. 20-71765)**

Robert C. May III
Michael D. Johnston
DR. JONATHAN L. KRAMER
TELECOM LAW FIRM, PC
3570 Camino del Rio North, Suite 102
San Diego, California 92108
(619)-272-6200
(619) 376-2300 (facsimile)

*Counsel for Petitioners and certain Intervenors in No. 20-71765, and certain Petitioners in No. 20-72734*

Kenneth S. Fellman
KISSINGER & FELLMAN, P.C.
3773 Cherry Creek North Drive
Suite 900
Denver, Colorado 80209
(303) 320-6100
(303) 327-8601 (facsimile)

*Counsel for certain Intervenors in No. 20-71765, and certain Petitioners in No. 20-72734*

Cheryl A. Leanza
BEST BEST & KRIEGER LLP
1800 K Street NW, Suite 725
Washington, DC  20006
(202) 785-0600

Gail A. Karish
BEST BEST & KRIEGER LLP
300 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
(213) 617-8100

*Counsel for Petitioners  in Case No. 20-72749*

# **INDEX**

| VOLUME | DATE | DESCRIPTION | PAGE |
|---|---|---|---|
| 1 | May 22, 2020 | NATOA Letter Re: Implementation of State and Local Governments' Obligation to Approve Certain Wireless Facility Modification Requests | FER-1 |
| 1 | June 2, 2020 | Commission Meeting Agenda: FCC to Hold Open Commission Meeting – June 9, 2020 | FER-3 |
| 1 | August 3, 2020 | Western Communities Coalition Comments-WT-19-250-NPRM-FINAL | FER-5 |

  
 

May 22, 2020

**VIA EMAIL AND ELECTRONIC FILING**

Chairman Pai
Commissioner O'Rielly
Commissioner Carr
Commissioner Rosenworcel
Commissioner Starks
Federal Communications Commission
445 12th Street, SW
Washington, District of Columbia 20554

RE: Implementation of State and Local Governments' Obligation to Approve Certain Wireless Facility Modification Requests Under Section 6409(a) of the Spectrum Act of 2012, WT Docket No. 19-250; RM-11849

Dear Chairman Pai and Commissioners O'Rielly, Carr, Rosenworcel and Starks,

The National Association of Telecommunications Officers and Advisors ("NATOA"),[1] the National League of Cities ("NLC"),[2] the National Association of Counties ("NACo"),[3] The United States Conference of Mayors ("USCM")[4] and the National Association of Towns and Townships ("NATaT")[5] ("Local Governments") urge the Commission to delay consideration of the Declaratory Ruling and Notice of Proposed Rulemaking in Docket 19-250, currently on the draft agenda for the Commission's June 9, 2020 meeting.

---

[1] NATOA's membership includes local government officials and staff members from across the nation whose responsibility it is to develop and administer communications policy and the provision of such services for the nation's local governments.
[2] NLC is the oldest and largest organization representing cities and towns across America. NLC represents 19,000 cities and towns of all sizes across the country.
[3] NACo represents county governments, and provides essential services to the nation's 3,069 counties.
[4] USCM is the official nonpartisan organization of cities with populations of 30,000 or more. There are more than 1,400 such cities in the country today. Each city is represented in the Conference by its chief elected official, the mayor.
[5] NATaT represents the interests of more than 10,000 towns and townships across the country at the federal level.

The proposed Declaratory Ruling, as currently drafted, would dramatically impact the way that local governments across the nation manage their eligible facilities request applications and require major changes to stealth or screening requirements for wireless deployments. Because the item did not arise out of a rulemaking proceeding, the Commission has not had the benefit of local government input into the proposal.

As a member of the intergovernmental partnership, local governments are a critical component of the Commission's proposal process. However, the Commission's sunshine rules would require all communications with the Commission on the proposed order to cease on June 2 - giving local governments less than two weeks to provide the Commission with insight on practical implications of the proposed order.

Local governments are now serving as our nation's front line defense as our country faces a rapidly evolving public health and economic crisis. To ensure an efficient and effective response to the COVID-19 pandemic, local governments need a strong yet flexible federal partner. As such, we would request that the proposed matter be carried over to a later agenda this summer to ensure our local intergovernmental partners can provide the appropriate time and attention to the regulatory proposals.

During these unique and challenging times, local governments remain a productive partner in assisting the nation win the race to 5G - just as they did during the deployment of past generations.

We thank you for the Commission's time and consideration of this request.

Sincerely,

Nancy Werner
General Counsel
National Association of Telecommunications
Officers and Advisors

Matthew D. Chase
Executive Director
National Association of Counties

Clarence E. Anthony
CEO and Executive Director
National League of Cities

Tom Cochran
CEO and Executive Director
The United States Conference of Mayors

Jennifer Imo
Executive Director
National Association of Towns and Townships



# Commission Meeting Agenda

**Federal Communications Commission**
445 12th Street, S.W.
Washington, D.C. 20554

A Public Notice of the Federal Communications Commission
News Media Information (202) 418-0500
Internet:   http://www.fcc.gov
TTY (888) 835-5322

June 2, 2020

## FCC TO HOLD OPEN COMMISSION MEETING
## TUESDAY, JUNE 9, 2020

The Federal Communications Commission will hold an Open Meeting on Tuesday, June 9, 2020, which is scheduled to commence at 10:30 a.m.  Due to the current COVID-19 pandemic and related agency telework and headquarters access policies, this meeting will be in a wholly electronic format and will be open to the public on the Internet via live feed from the FCC's web page at www.fcc.gov/live and on the FCC's YouTube channel.

| ITEM NO. | BUREAU | SUBJECT |
|---|---|---|
| 1 | **WIRELINE COMPETITION & ECONOMICS & ANALYTICS** | **TITLE:**   Rural Digital Opportunity Fund Final Auction Procedures (AU Docket No. 20-34; WC Docket No. 19-126; WC Docket No. 10-90)  **SUMMARY:**  The Commission will consider a Public Notice that would establish procedures for the Phase I auction of the Rural Digital Opportunity Fund (Auction 904), awarding up to $16 billion in support over 10 years for deployment of broadband in unserved areas. |
| 2 | **WIRELESS TELE-COMMUNICATION** | **TITLE:**   Modernizing and Expanding Access to the 70/80/90 GHz Bands (WT Docket Nos. 20-133, 10-153, 15-244; RM-11824, RM-11825)  **SUMMARY:**  The Commission will consider a Notice of Proposed Rulemaking and Order that would explore innovative new uses of the 71–76 GHz, 81–86 GHz, 92–94 GHz, and 94.1–95 GHz bands, including potential rule changes to allow for the provision of wireless backhaul for 5G and the deployment of broadband services to aircraft and ships. |
| 3 | **WIRELESS TELE-COMMUNICATION** | **TITLE:**   State/Local Approval of Wireless Equipment Modifications (WT Docket No. 19-250; RM-11849) |

*The summaries listed in this notice are intended for the use of the public attending open Commission meetings. Information not summarized may also be considered at such meetings.  Consequently, these summaries should not be interpreted to limit the Commission's authority to consider any relevant information.

FER-3

|   |   |   |
|---|---|---|
|   |   | **SUMMARY:** The Commission will consider a Declaratory Ruling and Notice of Proposed Rulemaking that would clarify, and seek comment on changes to, the Commission's rules implementing section 6409(a) of the Spectrum Act of 2012 in order to accelerate the deployment of communications infrastructure by facilitating the upgrade of existing sites for 5G networks. |
| **4** | **MEDIA** | **TITLE:** Promoting Broadcast Internet Innovation through ATSC 3.0 (MB Docket No. 20-145) |
|   |   | **SUMMARY:** The Commission will consider a Declaratory Ruling that would remove regulatory uncertainty concerning use of Broadcast Internet services provided by broadcast TV licensees as an ancillary and supplementary service, and a Notice of Proposed Rulemaking that would seek comment on modifying and clarifying existing rules to promote the deployment of Broadcast Internet services as part of the transition to ATSC 3.0. |
| **5** | **ENFORCEMENT** | **TITLE:** Enforcement Bureau Action |
|   |   | **SUMMARY:** The Commission will consider an enforcement action. |

The meeting will be webcast with open captioning at: www.fcc.gov/live.  Open captioning will be provided as well as a text only version on the FCC website.  Other reasonable accommodations for people with disabilities are available upon request.  In your request, include a description of the accommodation you will need and a way we can contact you if we need more information.  Last minute requests will be accepted but may be impossible to fill.  Send an e-mail to: fcc504@fcc.gov or call the Consumer & Governmental Affairs Bureau at 202-418-0530.

Additional information concerning this meeting may be obtained from the Office of Media Relations, (202) 418-0500.  Audio/Video coverage of the meeting will be broadcast live with open captioning over the Internet from the FCC Live web page at www.fcc.gov/live.

**-FCC-**

2

FER-4

which to review multiple purported eligible facilities requests related to the same site, at the same time, but by different applicants.

For example, how could a local official know that a proposed increase in height by one carrier on a shared monopine would not exceed the cumulative height limit if submitted while another carrier on the same monopine sought a similar modification? Likewise, the inability to establish a baseline condition may result in multiple conflicting approvals.

Accordingly, the Commission should decline to act on any proposal that would require local governments to accept applications by the applicant's method of choice. This approach would be consistent with the Commission's policy choices in the *2014 Infrastructure Order* that stressed cities should have "flexibility . . . to exercise their rights and responsibilities" regarding procedures for review of applications under Section 6409(a).[17]

    2.    WIA's Proposal to Commence the Shot Clock After a "Good Faith Attempt" Lacks a Basis in the Act, the Record and Common Sense

To support its rule change, the Commission must construe ambiguities in a manner the statute permits.[18] However, neither Section 6409(a), Section 332(c)(7), WIA's unverified allegations, nor the downstream implications of WIA's proposal justify a clarification. The Commission should therefore reject the proposed "good faith attempt" and "any reasonable process" standards.[19]

---

[17] *2014 Infrastructure Order* at ¶ 221.
[18] *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984).
[19] Many arguments raised by certain Western Communities Coalition members in the Commission's *Small Cell Order* proceeding are applicable to this issue. *See* In the Matter of Accelerating Wireless

- 7 -

{00050769;4}

a.  *The Proposed "Good Faith Attempt" Standard Conflicts with the Plain Language in Section 332(c)(7)(B)(ii)*

WIA's proposed "good faith attempt" and "any reasonable process" standards conflict with the plain text in the shot clock's underlying statute. Section 332(c)(7)(B)(ii) states in full:

> A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is *duly filed* with such government or instrumentality, taking into account the nature and scope of such request.[20]

The statute requires more than a mere "good faith attempt" to file by "any reasonable process" determined by the applicant. By the ordinary definitions, the phrase "duly filed" literally means to properly initiate a judicial or administrative proceeding by submitting the proper documents or following proper procedure.[21] Any interpretation to mean an event less than *actual submittal* through the *proper local procedures* would directly conflict with the statute.

b.  *The Proposed Rule Would Reverse the 2014 Infrastructure Order Based on Vague and Unverified Anecdotes in the Petitions*

---

Broadband Deployment by Removing Barriers to Infrastructure Investment, Comments of the League of Arizona Cities and Towns *et al.*, WT Docket No. 17-79 at 14–25 (Jun. 15, 2017). Rather than restate them here, the Western Communities Coalition attaches those comments as **Exhibit F** and incorporates them herein by this reference.

[20] 47 U.S.C. § 332(c)(7)(B)(ii) (emphasis added).

[21] *See Duly*, Merriam-Webster, https://www.merriam-webster.com/dictionary/duly ("properly"); *File*, Merriam-Webster, https://www.merriam-webster.com/dictionary/filed (last visited Oct. 10, 2019) ("to submit (a legal document) to the proper office (as the office of a clerk of court) for keeping on file among the records especially as a procedural step in a legal transaction or proceeding").

Despite the Commission's request for factual data, WIA maligns unnamed communities with vague and unverified anecdotes.[22] These "bad actor" stories are legally insufficient evidence upon which to support a rule change that will impact thousands of localities. Rather, WIA's practice of leaving local governments guessing whether a factual basis to its stories exist can only be viewed as an attempt to evade scrutiny. Even if there is any truth to the allegations, which is impossible to determine from the current record, the existing deemed granted remedy is sufficient to combat isolated incidents of a local refusal to process a Section 6409(a) request.

As the Commission properly recognized in the *2014 Infrastructure Order*, "the prospect of a deemed grant will create significant incentives for States and municipalities to act in a timely fashion."[23] WIA's selective storytelling does not indicate whether its members even attempted to leverage a deemed grant, or whether other factors involved in the application absolve the maligned localities. Regrettably, and perhaps by design, WIA provides no opportunity to refute, correct or verify these and similar allegations.

Accordingly, the Commission should afford these allegations no weight and reject WIA's proposed rule change. Considering the factual data and

---

[22] *Compare* Public Notice (inviting interested parties to submit factual data and economic analysis), *with* WIA Decl. R. Petition at 8 (providing no support for its claim that (1) some "localities" have no EFR procedures and claim they cannot process such applications until the procedures are established; (2) "jurisdictions claim that additional information not required by local codes must be provided before it will accept an EFR; (3) "some localities simply refuse to acknowledge or accept EFRs and thus claim that the shot clock has not been triggered."; and (4) "some local governments will bounce an EFR between departments or processes and then disregard the shot clock or argue that the shot clock has not started.").
[23] *2014 Infrastructure Order* at ¶ 233.